[Civ. No. 12825.   Second Dist., Div. Two.—May 28, 1941.]

JAMES S. HURWIT, Respondent, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA (a Corporation), Appellant.

Walker, Adams, Duque & Smith, Henry Duque and Mark E. True for Appellant.

Pacht, Pelton, Warne & Black for Respondent.

WOOD, J.—Plaintiff commenced this action to recover for total and permanent disability payments under a policy of life insurance issued to him by defendant. The jury returned a verdict in favor of plaintiff and the appeal is taken by defendant from the resulting judgment.

Plaintiff was 58 years of age at the time of the trial. As a youth in the city of New York he had studied at night and in this way had gained the equivalent of a high school education. He also studied accounting for ''a couple of months'' in a business college. Before going into business for himself plaintiff worked for others for a period of 8 years as a salesman in the hardware business. From 1910 or 1911 until October, 1929, plaintiff personally operated a hardware and paint store on Long Island, New York. In his business plaintiff was the chief salesman, waited on customers, helped load the delivery truck, checked bills and went outside to make collections. His only employees were a clerk, a man who delivered orders and his wife. He has never done any other kind of work.

Defendant sold plaintiff a policy of life insurance on March 14, 1923. In consideration of the immediate payment of an extra premium of $52.50, and of the payment of extra annual premiums in the same amount, the policy was on March 14, 1927, amended to provide for permanent and total disability payments as follows:

"If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he . . . is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his . . . lifetime, . . . the Company . . . will grant the following benefits . . . "

On the same date, in consideration of the payment of another additional premium of $45.25, and thereafter of the payment of additional extra annual premiums in the same amount, the policy was also amended to provide as follows:

" . . . The following provisions are hereby made a part of the clause headed 'Provisions as to Total and Permanent Disability', contained in this policy: If . . . the Insured shall furnish due proof that he has been totally disabled, either physically or mentally, from any cause whatsoever, to such an extent that he was rendered wholly and continuously unable to engage in any occupation or perform any work for any kind of compensation of financial value during a period of ninety consecutive days . . . such disability shall be presumed to be permanent and the Company will upon receipt of such proof grant the disability benefits provided, subject to all other provisions of said clause including those relating to proofs of continuance of disability."

The provision relating to proof of continuance of disability reads as follows:

" . . . The Insured, upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he . . . actually continues in the state of disability defined above . . . "

Plaintiff was taken ill with asthma in October, 1929, and ceased all work. Under directions of physicians he went to Florida and California and thereafter returned to New York. He had several nasal operations but continued to be ill.

An application for total and permanent disability benefits was made by plaintiff on June 7, 1930. The claim was approved by defendant and payments were made, including back payments to October 17, 1929. These payments were continued until November 18, 1931. Then followed about ten or eleven months of correspondence between plaintiff and defendant on the question whether plaintiff ceased to be entitled to disability benefits. The controversy was terminated by a letter from defendant to plaintiff dated July 28, 1932, in which defendant stated that it was "satisfied at this time that you are totally disabled". The letter suggested that plaintiff go to Arizona to improve his condition. Defendant thereafter paid to plaintiff all payments due, until October 17, 1938. Plaintiff went to Arizona on September 1, 1932, where he continued to suffer. In 1935 he came to Los Angeles.

There is a decided conflict in the testimony of the parties concerning the condition of plaintiff's health. Witnesses for the plaintiff, including experts, testified that he is unable to engage in any occupation. A number of expert witnesses for defendant testified that plaintiff is able to engage in a sedentary occupation such as bookkeeping, or as an executive, or in an advisory capacity to a hardware company.

The principal contention of defendant is that the trial court erred in its instructions to the jury on the subject of what constitutes "any occupation" and "any work". The instructions at which criticism is aimed are as follows:

## "Plaintiff's Instruction No. 8.

"The words in the policy of insurance in evidence in this case which deal with the right of the assured to receive disability benefits if he is totally and permanently disabled read as follows:

"'If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime . . .'

"I charge you that the law is and the disability clause which I have quoted to you means that the insured is entitled

to the disability benefits when his disability is such that he is unable to perform the substantial and material acts of his business or occupation in the usual and customary way and when such disability is presumably permanent.

"The expressions in the policy 'any occupation' and 'any work' mean the ordinary employment of the insured or such other employment, if any, approximately [approximating] the same livelihood as the insured might fairly be expected to follow, in view of his station, circumstances and physical and mental capabilities. If the insured is so incapacitated that substantially all of the material activities of any such employment are reasonably closed to him, he is totally disabled within the meaning of the policy.

### "Plaintiff's Instruction No. 5.

"I instruct you that the provisions of the insurance contract in this case, relating to the disability benefits, do not require that the disease or diseases from which the plaintiff may be suffering shall render him absolutely helpless, but such provisions are construed in law as meaning such a disability as renders him unable to perform the substantial and material acts of his business or occupation in the usual and customary way. The fact that the insured may have done some work or engaged in some activities of pleasure, or transacted some business duties during the time for which he claims payment for total disability, is not conclusive evidence that his disability is not total and permanent within the meaning of the policy. The test of disability is not what the plaintiff has actually done in an effort to perform the duties of his occupation, but what in the exercise of due prudence he was reasonably able to do. This is a question of fact which you should determine under all the evidence in the case and under all of the instructions of the court on the law of the case, and if you find from a preponderance of the evidence and under these instructions that the plaintiff has been so totally and permanently disabled, your verdict will be for the plaintiff and against the defendant.

### "Plaintiff's Instruction No. 6.

"The defendant in this case admits that the plaintiff is, and for many years has been, suffering from the disease known as chronic asthma, but claims that this does not prevent the plaintiff from following some sedentary occupation,

and therefore, that under the terms and provisions of the contract of insurance he is not totally and permanently disabled. I instruct you that it is for you to determine as a fact under all the evidence in the case and the instructions of the court whether or not the plaintiff is totally and permanently disabled. In that connection I charge and instruct you that if the plaintiff's condition, as a result of the disease, is such that common care and prudence required that he desist from the transacting of business or working, and his condition is presumably permanent and continuous, he is permanently and totally disabled, within the meaning of the contract, though he may not be physically disabled to perform occasional acts of pleasure or acts connected with his business, profession or occupation.''

It will be noted that in plaintiff's instruction No. 8, after quoting the essential provisions in the policy, the court informed the jury that plaintiff would be entitled to disability benefits if his disability be shown to be such as to render him unable to perform the substantial and material acts of his business or occupation in the usual way. This instruction is followed immediately by an explanation of the meaning of the words ''any occupation'' and ''any work''. The jury was told that they refer to the ordinary employment of the insured or such other employment, if any, approximating the same livelihood as the insured might fairly be expected to follow in view of his station, circumstances and physical and mental capabilities. In instruction No. 5 reference is made to ''his experience'' and ''his occupation''. This instruction dealt with the proposition that it was not necessary that plaintiff be absolutely helpless. The jury, however, had just been given an explanation of the meaning of the terms ''any occupation'' and ''any work''. They unquestionably considered all of the instructions together and were not misled by the failure of the court to again explain those terms in instruction No. 5. The same observation is applicable to plaintiff's instruction No. 6, in which the court called attention to defendant's claim that plaintiff's disease did not prevent his following some sedentary occupation and in which the jury was told that it was for them to determine whether plaintiff was totally and permanently disabled.

A similar situation was present in *Hill* v. *New York Life Insurance Co.*, 38 Cal. App. (2d) 627 [101 Pac. (2d) 752],

where the court in one of its instructions used the expression "his business or occupation". It was held that when considered alone the instruction was erroneous but when considered with the other instructions it was not confusing to the jury. Immediately after discussing the criticised instruction the court gave a definition of the expressions "any occupation" and "any work" in the language of *Prudential Ins. Co.* v. *South,* 179 Ga. 653 [177 S. E. 499, 98 A. L. R. 781]. This definition corresponds to the definition of the same expressions which appears in plaintiff's instruction No. 8 herein. In the Hill case the court pointed out that there was no evidence that the plaintiff could indulge in any occupation other than the one which he followed at the time of the issuance of the policy.  So in the case before us there is no evidence that plaintiff could follow any other occupation, if we are to be guided by the definition in the Hill case and as set forth in plaintiff's instruction No. 8. It is true that certain experts testified that plaintiff could act as executive, as adviser to a hardware company or as a bookkeeper, the conditions being that the occupation be sedentary and that physical exertion be not required. Fantastic indeed is the contention that one who has been compelled for years by chronic asthma to desist from the operation of his hardware store, the only business he knew, could achieve success as an executive in the employ of others or as an adviser to a hardware company; and fanciful is the contention that in view of present day standards and competition one in plaintiff's situation could reasonably hope to obtain or retain a position as bookkeeper, his limited knowledge of the subject having been gained while studying for two months in a business college during his youth. We agree with the conclusion reached by the Georgia court in the case above cited that it was not within the contemplation of the parties that the insured would be unable to recover if he "might embark in the peanut trade or follow the business of selling shoe strings or lead pencils, or follow some similar calling".

The authorities are by no means in accord concerning the construction to be placed upon a general disability clause such as that contained in the policy sued upon. They may, however, be divided into three groups, representing the two extreme and the intermediate views. In the jurisdictions which apply the strict or literal rule of construction the in-

sured is permitted to recover only when there is proof that he has as a result of his disability become totally unable to engage in *any* occupation or employment for wage or profit. (*Garms* v. *Travelers' Ins. Co.*, 242 App. Div. 230 [273 N. Y. Supp. 39]; *Metropolitan Life Ins. Co.* v. *Guinn*, 199 Ark. 994 [136 S. W. (2d) 681]; *Cooper* v. *Metropolitan Life Ins. Co.*, 317 Pa. 405 [177 Atl. 43].) On the other extreme is the liberal rule of construction, under which the disability provision of a policy is construed as if it were occupational rather than general. These authorities permit a recovery upon mere proof that the insured is by reason of his disability unable to follow his customary business or occupation or is unable to perform substantially all of the material acts necessary to its prosecution. (*Equitable Life Assur. Soc.* v. *McDonald*, 280 Ky. 825 [134 S. W. (2d) 953]; *Aetna Life Ins. Co.* v. *Person*, 188 Ark. 864 [67 S. W. (2d) 1007].) ▇ The third or intermediate view is the most reasonable. It is the one which we have followed and which was favored in *Hill* v. *New York Life Ins. Co., supra,* and in *Wright* v. *Prudential Ins. Co.*, 27 Cal. App. (2d) 195 [80 Pac. (2d) 752]. The authorities supporting this rule define total disability which prevents the insured from engaging in any occupation or performing any work for compensation as a disability which prevents his working with reasonable continuity in his customary occupation or in any other occupation in which he might reasonably be expected to engage in view of his station and physical and mental capacity. (*Misskelley* v. *Home L. Ins. Co.*, 205 N. C. 496 [171 S. E. 862]; *Equitable Life Assur. Soc.* v. *Wiggins*, 115 Fla. 136 [155 So. 327]; *Ursaner* v. *Metropolitan Life Ins. Co.*, 146 Misc. 121 [262 N. Y. Supp. 462]; *Kane* v. *Metropolitan Life Ins. Co.*, 228 Mo. App. 649 [73 S. W. (2d) 826]; *Nickolopulos* v. *Equitable Life Assur. Soc.*, 113 N. J. L. 450 [174 Atl. 759]; *Prudential Ins. Co.* v. *South, supra.*) The authorities cited in support of the three views are not intended to be exhaustive. (For additional citations see 24 A. L. R. 203; 37 A. L. R. 151; 41 A. L. R. 1376; 51 A. L. R. 1048; 79 A. L. R. 857 and 98 A. L. R. 788.)

▇ Defendant contends that the trial court erred in permitting expert witnesses for plaintiff to give opinions on the question whether plaintiff was totally disabled, claiming that such witnesses invaded the province of the jury. As a general rule the ultimate question for the determination of

the jury should be passed upon by the jurors and not by the witnesses. It is not argued that the physicians could not give their opinions as to whether plaintiff could follow a sedentary occupation. It is extremely difficult to draw a clear line of demarcation between the field in which the experts may give their opinions and the field which is reserved exclusively for the jury. If it be conceded that some of plaintiff's witnesses were allowed too much latitude, it is apparent from all of the evidence that no prejudice resulted, for they were allowed to testify exhaustively on the subject with opportunity to give reasons for the opinions expressed. A clear answer to defendant's criticism appears, however, in the fact that other witnesses for plaintiff were allowed to give testimony of the same nature without objection from defendant. (*Holahan* v. *McGrew,* 111 Cal. App. 430, 439 [295 Pac. 1054].) Moreover, it appears that defendant's expert witnesses were permitted to answer questions of the same tenor as those which were propounded by plaintiff to his expert witnesses. That neither party was prejudiced by the ruling permitting the experts to give their opinions on the subject of total disability becomes apparent when it is brought to mind that the court instructed the jury concerning the opinion of an expert as follows: "Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject any such opinion if in your judgment the reasons given for it are unsound."

The judgment is affirmed.

Moore, P. J., concurred.

McCOMB, J., Dissenting.—I dissent: From a judgment in favor of plaintiff after trial before a jury in an action to enforce an insurance policy providing for payments to plaintiff if he be continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value, defendant appeals.

The essential facts are:

Defendant issued a policy of insurance to plaintiff containing among others the following provisions:

"If the Insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly,

continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the date hereof, while this Policy is in full force and effect, and while the Insured is less than sixty years of age, and before any non-forfeiture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits: . . . ''

After the policy was issued plaintiff, who was engaged in the hardware business, became physically unable to continue in his business and, upon his making proper proof, defendant made disability payments to him from October 14, 1929, to October 17, 1938. October 21, 1938, defendant advised plaintiff that he was no longer entitled to disability benefits and declined to make further payments. A number of doctors testified at the trial that in their opinion plaintiff's health would permit him to engage in some occupation not involving physical exercise but of financial value.

Defendant relies for reversal of the judgment on the proposition *that it was error for the trial court to instruct the jury that the clause in the life insurance policy above quoted meant that plaintiff was entitled to disability benefits thereunder if he was unable to perform the substantial and material acts of "his" business, and that in place of such instruction the jury should have been instructed that such clause meant that plaintiff was entitled to disability benefits only when his disability was such that he would be unable to perform the substantial and material acts connected with "any" business.*

This proposition is tenable. It is to be noted that:

(1) The policy which is the basis of the present suit is a total disability policy as distinguished from an occupational policy. By an occupational policy the insured may recover upon a showing that he is substantially unable to perform the acts required by his business or profession, while under a total disability policy he must prove his disability is such as to prevent him from engaging in any occupation or performing work for compensation of financial value. Most of the cases cited by plaintiff arise under provisions of occupational policies and are, therefore, inapplicable to the facts of the instant case.

(2) Defendants concede that a liberal construction is to be placed upon clauses of an insurance policy (*Wright* v. *Prudential Ins. Co., etc.*, 27 Cal. App. (2d) 195, 205 [80 Pac. (2d) 752]; *Hill* v. *New York Life Ins. Co.*, 38 Cal. App. (2d) 627, 632 [101 Pac. (2d) 752]). In the instant case the trial court instructed the jury at plaintiff's request as follows:

### "Plaintiff's Instruction No. 8.

"The words in the policy of insurance in evidence in this case which deal with the right of the assured to receive disability benefits if he is totally and permanently disabled read as follows:

'If the insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such an extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime . . . ,'

"I charge you that the law is and the disability clause which I have quoted to you means that the insured is entitled to the disability benefits when his disability is such that he is unable to perform the substantial and material acts of his business or occupation in the usual customary way and when such disability is presumably permanent.

"The expressions in the policy 'any occupation' and 'any work' mean the ordinary employment of the insured or such other employment, if any, approximately (*sic*) the same livelihood, as the insured might fairly be expected to follow, in view of his station, circumstances, and the physical and mental capabilities. If the insured is so incapacitated that substantially all of the material activities of any such employment are reasonably closed to him, he is totally disabled within the meaning of the policy.''

### "Plaintiff's Instruction No. 5.

"I instruct you that the provisions of the insurance contract in this case, relating to the disability benefits, do not require that the disease or diseases from which the plaintiff may be suffering, shall render him absolutely helpless, but such provisions are construed in law as meaning such a disability as renders him unable to perform the substantial

and material acts of his business or occupation in the usual and customary way. The fact that the insured may have done some work or engaged in some activities of pleasure, or transacted some business duties during the time for which he claims payment for total disability, is not conclusive evidence that his disability is not total and permanent within the meaning of the policy. The test of disability is not what the plaintiff has actually done in an effort to perform the duties of his occupation, but what in the exercise of due prudence he was reasonably able to do. This is a question of fact which you should determine under all the evidence in the case and under all of the instructions of the Court on the law of the case, and if you find from a preponderance of the evidence and under these instructions that the plaintiff has been so totally and permanently disabled, your verdict will be for the plaintiff and against the defendant.''

''Plaintiff's Instruction No. 6.

''The defendant in this case admits that the plaintiff is, and for many years has been, suffering from the disease known as chronic asthma but claims that this does not prevent the plaintiff from following some sedentary occupation, and therefore, that under the terms and provisions of the contract of insurance he is not totally and permanently disabled. I instruct you that it is for you to determine as a fact under all the evidence in the case and the instructions of the Court, whether or not the plaintiff is totally and permanently disabled. In that connection I charge and instruct you that if the plaintiff's condition, as a result of the disease, is such that common care and prudence required that he desist from the transacting of business or working, and his condition is presumably permanent and continuous, he is permanently and totally disabled, within the meaning of the contract, though he may not be physically disabled to perform occasional acts of pleasure or acts connected with his business, profession or occupation.''

It is the law that under a clause in an insurance policy such as that involved in the present case, defendant is not liable unless plaintiff be wholly disabled from engaging in ''any'' occupation of employment for profit. It is not sufficient that the evidence disclose that he is disabled from engaging in ''his'' occupation. In referring to a clause similar

to the one here involved, the Supreme Court of New York, Appellate Division (*Garms* v. *Travelers' Ins. Co.*, 242 App. Div. 230 [273 N. Y. Supp. 39]), speaking through Mr. Justice Martin thus accurately states the rule:

"... The Insurance Company is not liable unless there be proof that the insured had been wholly disabled by bodily injuries or disease and will be continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit. The trial court sent this question to the jury, and a verdict was rendered for the plaintiff. To prove the second cause of action it was necessary for plaintiff to show that he had sustained bodily injury as a result of which he would thereafter be prevented for life, from engaging in any occupation or employment for wage or profit."

In accord with this rule are the following cases: *Metropolitan Life Ins. Co.* v. *Guinn*, 199 Ark. 994 [136 S. W. (2d) 681, 684]; *Cooper* v. *Metropolitan Life Ins. Co.*, 217 Pa. 405 [177 Atl. 43, 44]; *Thigpen* v. *Jefferson Standard Life Ins. Co.*, 204 N. C. 551 [168 S. E. 845, 847]; *Jones* v. *Connecticut General Life Ins. Co.*, 114 W. Va. 651 [173 S. E. 259, 262]; *Wyckoff* v. *Metropolitan Life Ins. Co.*, 302 Ill. App. 241 [23 N. E. (2d) 802, 804]; *Kaneb* v. *Equitable Life Assur. Soc.*, 304 Mass. 309 [23 N. E. (2d) 889, 890]; *Shabotzky* v. *Equitable Life Assur. Soc.*, 257 App. Div. 257 [12 N. Y. Supp. (2d) 848, 852]; *Hill* v. *New York Life Ins. Co.*, 38 Cal. App. (2d) 627, 636 [101 Pac. (2d) 752].

Applying the foregoing rule to the present case, it is apparent that the instructions given by the trial court were erroneous in stating that defendant was liable to plaintiff if the jury should find that plaintiff was disabled from following "his" occupation, nor was this error cured by the fact that the trial court gave other instructions which correctly stated the law. Such instructions simply were contradictory of the instructions stated above and thus tended to confuse the jury (*Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, 280 [201 Pac. 599]). Incorrect instructions on a material issue will not be cured by a correct statement of the law in another instruction, for it is impossible to determine which instruction the jury has followed (*Gaster* v. *Hinkley*, 85 Cal. App. 55, 62 [258 Pac. 988]). Article VI, section 4½ of the Constitution of the State of California is inapplicable to the facts

of the instant case, for the reason that it is not possible to determine whether the jury would have returned the same verdict had they been correctly instructed, since the record in the present case discloses that plaintiff had the equivalent of a high school education, had studied accounting and bookkeeping, and had engaged in business as a salesman over a long period of years. In the opinion of a number of the doctors, who testified at the trial, plaintiff at the time of the trial was able to engage in some gainful occupation.

For the foregoing reasons the judgment in my opinion should be reversed.

A petition for a rehearing was denied June 23, 1941. McComb, J., voted for a rehearing.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1941.